IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>AUSTIN WAYNE HALEY,<br><br>        Defendant. | Case No. 26-CR-009-SEH |

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Revoke Order of Detention [ECF No. 21]. The government has not responded to the motion. For the reasons set forth below, the motion is denied.

## I. Background and Procedural History

Defendant Austin Haley is charged with seven counts of Abusive Sexual Contact in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 2244(a)(2). [ECF No. 17]. Before Defendant's initial appearance on the related complaint, the government filed a motion for detention, asserting that the court should detain because no conditions, or combination of conditions, of release could reasonably assure Defendant's appearance and the safety of any other person and the community. [ECF No. 3 at 2].

On December 17, 2025, United States Magistrate Judge Jodi F. Jayne held a detention hearing. [ECF No. 14]. Judge Jayne found that the weight of

evidence against Defendant was strong, that he had a prior criminal history, and that he had a history of violence or use of weapons. [ECF No. 15]. After hearing testimony from FBI Special Agent Audra Rees and the proffers of the parties, Judge Jayne determined that the government had proven by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community and ordered that the defendant be detained. [*Id.* at 2].

### A. Special Agent Rees and the Government's Proffer

The government proceeded through witness testimony and proffer at the detention hearing. [ECF No. 23 at 4–38]. FBI Special Agent Rees testified that, as alleged in the Complaint, six different women had made sexual contact allegations against Defendant. [*Id.* at 5]. The alleged offenses occurred between October 14, 2024, and December 3, 2025. [*Id.* at 5–14]. Twenty-one additional victims have since been identified by law enforcement who were not yet identified in the Complaint. [*Id.* at 25].

Special Agent Rees went through the individual facts of each of the alleged incidents involving A.M., S.S., S.C., T.B., C.C., and L.W. [*Id.* at 5–14]. Each instance occurred either at Defendant's home or at his tattoo studio. [*Id.*]. In each case, the alleged contact occurred while Defendant tattooed each victim. [*Id.*]. The victims stated that Defendant was wearing pants through which

2

his penis could be easily exposed. [*Id.*]. During the process of tattooing the women, the victims allege that Defendant would reposition their bodies and his until his bare penis was resting on or touching their hands. [*Id.*]. In one case, a woman claims he ejaculated on her hand. [*Id.* at 13].

Special Agent Rees also testified about Defendant's history. Defendant is subject to a domestic violence protective order. [*Id.* at 16]. Although he has never been charged with violating the protective orders against him, he was prohibited under state and federal law of possessing a firearm because of those protective orders. [*Id.* at 34].

On September 14, 2025, police responded regarding a disturbance at Defendant's tattoo shop. [*Id.* at 18]. A responding officer spoke with Defendant at the scene, and he showed them surveillance video of the interior of the shop during the relevant timeframe. [*Id.*]. In the video, the officer saw Defendant retrieve a firearm from a drawer and place it in his waistband. [*Id.*]. After Defendant was arrested on the instant charges, officers recovered a pistol and 200 rounds of ammunition from his home. [*Id.* at 43]. Rees also stated that she had seen a video obtained from Facebook where Defendant pointed a gun at someone, but she did not know where the video came from or when it was taken. [*Id.* at 22–23].

3

Rees testified that Defendant did have some criminal history. He was arrested in South Carolina and initially charged with what appears to be a sex crime. [*Id.* at 34–35]. The incident occurred in April of 2017 and involved a sixteen year old victim. [*Id.* at 21]. Defendant eventually pled guilty to a misdemeanor assault and battery charge with 30 days of custody. [*Id.* at 22]. According to Rees, Defendant admitted that he'd also been arrested for an assault in Texas involving weapons, but the case against him was ultimately dismissed. [*Id.* at 22, 36].

The government asked the magistrate judge to take judicial notice of the pretrial service report and proffered that Defendant told the court on December 10, 2025, during his initial appearance that he had not been able to speak with his fiancé about hiring counsel because he had not yet been given an opportunity to call her. [*Id.* at 38]. The government later proffered that Defendant had, in fact, placed 23 calls to his fiancé prior to his initial appearance. [*Id.* at 43].

### B. Defendant's Proffer

First, Defendant addressed the Facebook video which allegedly showed him pointing a weapon at a person. Defendant proffered that another video existed which showed the complaining witness in that case with a long kitchen knife, and that the video on Facebook didn't show the whole story.

4

[*Id.* at 39]. Defendant also proffered that he could go to his fiancé's parents' home if released. [*Id.* at 38–40]. That home has no firearms or drugs, and the other residents in the home, including Defendant's fiancé, her sister, and her parents, could ensure that Defendant did not do any tattoo work if that were made a condition of release. [*Id.* at 40].

Defendant also asked the Court to recognize that he had lived for many years in Oklahoma. [*Id.*]. Relatedly, Defendant proffered that his children attended Bixby schools and his family lives in the area. [*Id.*]. Prior to his arrest, Defendant was employed as a tattoo artist and used the money he earned to support his children and partner. [*Id.*]. Without his income and with him being unable to provide child care, Defendant proffered that his family would suffer from financial difficulties. [*Id.* at 41].

### C. The Pretrial Services Report

The government requested that Judge Jayne consider the pretrial services report ("PTSR"), and there was no objection by the Defendant. [*Id.* at 38]. Some information in the report was verified by Defendant's fiancé, Chelsea Galarza. [PTSR at 1.]. Defendant and Galarza have been in a relationship since 2023, share three children, and have been living in Bixby for the previous three years. [*Id.* at 2]. Defendant reported that there were no firearms in the home, but Galarza reported that there was one firearm in the

5

residence. [*Id.* at 2.] Defendant and Galarza verified that he had never used illegal substances. [*Id.*].

The report indicates that Defendant had been previously arrested for driving while under the influence, possession of drug paraphernalia, possession of marijuana, and possession of a hallucinogenic drug. [*Id.* at 4]. The report also noted a history of probation violations and a history of criminal activity while under supervision, but no details provided about any such alleged violations. [*Id.* at 5.]. Ultimately, the Probation Office determined that no condition or combination of conditions would reasonably assure the appearance of Defendant or safety of the community. [*Id.*].

### D. *Judge Jayne's Order*

After hearing the proffers and arguments from both parties, Judge Jayne ordered that Defendant be detained pending trial. In her order, Judge Jayne specifically stated that the number of victims involved and the similarity of their allegations, the long span of time over which the alleged events had occurred, and abuse of power inherent in the way the offenses were alleged to have been committed all influenced her decision. [ECF No. 15 at 4]. She also observed that Defendant's alleged actions "include a pattern of brazen unwanted sexual contact in somewhat public settings". [*Id.*]. She referenced Defendant's prior criminal history, the protective orders filed against him,

and evidence of his prior prohibited possession of a firearm as additional reasons for concern. [*Id.*].

To be sure, Judge Jayne found that there were factors that weighed in Defendant's favor. His lack of prior felony convictions, his history of stable employment and housing, his connections with his family and the local community were all cited as positive factors. [*Id.*]. Judge Jayne characterized Defendant's personal history and characteristics as "mostly positive." [*Id.*]. Despite these positive factors, though, and after weighing all of the information, she was "not persuaded that Defendant's risks of danger to the public are limited to situations where he is performing work as a tattoo artist" particularly considering the fact that "[s]ome of the alleged conduct occurred at Defendant's residence. [*Id.*].

After hearing arguments from both parties, Judge Jayne determined by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. [*Id.* at 2]. The reasons for this determination included the strong weight of the evidence against Defendant, his prior criminal history, and his history of violence or use of weapons. [*Id.*].

## II. Applicable Standard

"If a person is ordered detained by a magistrate judge … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The Court's review of a magistrate judge's detention order is *de novo*; thus, it must make "an independent determination of the proper pretrial detention or conditions for release." *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

Under the Bail Reform Act, a court must order a criminal defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Specifically, the government must prove danger to any other person or the community by clear and convincing evidence. *Cisneros*, 328 F.3d at 616 (citations omitted).

To determine whether there are conditions that would "reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community[,]" the Court must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "[A]pplying and weighing the relative importance of the statutory factors requires an individualized determination that necessarily differs for each defendant depending on the circumstances of the case." *United States v. Bragg*, No. 21-5082, 2021 WL 6143720, at *2 (10th Cir. Dec. 30, 2021).[1]

**III. Analysis**

Based upon its independent, *de novo*, review of the record, the Court concludes that the government has shown clear and convincing evidence that

---

[1] Unpublished Tenth Circuit opinions are not binding precedent but may be cited for their persuasive value. *See* Fed. R. App. P. 32.1.

there are no conditions, or combination of conditions, that will reasonably assure the safety of any other person and the community if Defendant were released on pretrial conditions.

*A. The Nature and Circumstances of the Charged Offenses*

As Judge Jayne observed, the Complaint and testimony of Special Agent Rees reveal remarkably similar allegations from six different women. Each woman alleges that Defendant placed his bare penis on their hands while they were being tattooed. [ECF No. 23 at 4-18]. Four of the victims describe the event occurring at his tattoo studio, and two describe this happening at his home. [*Id.*]. At least four of the women, L.W., C.C., S.S., and A.M., describe this occurring while they were lying face down while the defendant tattooed them. [*Id.*] This factor weighs in favor of detention.

*B. The Weight of the Evidence*

The second factor also favors detention and is related to the first factor. The similarity of the alleged victim's accounts and the number of such similar accounts all provide significant weight to the evidence in this case.

*C. The History and Characteristics of the Defendant*

Defendant's history and characteristics are mixed. He is 30 years old and has been a member of his community for many years. [PTSR at 1–2.]. He has lived in his current home with his partner since 2023 and has at least three

minor children in his home. [*Id.* at 2]. Before the investigation that gave rise to the Complaint, he had been consistently employed, reported no history of substance abuse, had minimal criminal history, and no reported mental or physical health concerns. [*Id.* at 2–3].

Defendant also has had three prior protective orders issued in the Tulsa County District Court. [PTRA at 4]. At least one of the protective orders was a domestic violence protective order. [ECF No. 23 at 16]. He has a 2017 misdemeanor conviction for assault and battery, although it notably began as a charge for sex crime. [*Id.* at 22].

Considering all the facts and circumstances, the Court finds this factor does not weigh in favor of detention.

### D. Nature and Seriousness of the Danger to any other Person or the Community if Defendant is Released

The Court finds Judge Jayne's analysis on this factor persuasive. Defendant's alleged offenses occurred in places and under circumstances where he had little expectation of privacy. It occurred in the home he shared with his wife and children, and it happened at his public business. There is little reason, under these circumstances, to believe that home detention would ensure the safety of the public. Even if it were possible to stop Defendant from tattooing, it is not clear that such a restriction would lessen the danger.

There is also the matter of Defendant's decision to possess a firearm even though he was prohibited from possessing firearms by the terms of the protective order granted against him. [ECF No. 23 at 55]. If Defendant was unwilling to abide by the restrictions placed upon him by the Tulsa County District Court, there is reason to doubt that he would abide by restrictions placed upon him by this Court. This makes it difficult for the Court to find any conditions that could reasonably assure the safety of the community if Defendant were released from custody.

All factors taken as a whole, the Court finds by clear and convincing evidence that there are no conditions or combination of conditions that would reasonably assure the appearance of Defendant at trial.

## Conclusion

Having conducted a *de novo* review, the Court finds that the government has proven that no release conditions or combinations of conditions would reasonably assure appearance of Defendant. Therefore, Defendant will remain detained pending trial.

IT IS THEREFORE ORDERED that Defendant's Motion to Revoke Detention Order [ECF No. 21] is DENIED.

DATED this 22nd day of January, 2026.

*Sara Hill*
Sara E. Hill
UNITED STATES DISTRICT JUDGE